STATE *ex rel.* KENNEDY *v.* HEAD, SHERIFF.

(*Knoxville*, September Term, 1944.)

Opinion filed February 3, 1945.

G. W. CHAMLEE and G. W. CHAMLEE, JR., both of Chattanooga, for relator.

NAT TIPTON, Assistant Attorney General, for respondent, appellant here.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

Relator escaped from communicable disease isolation quarters to which she had been committed for a venereal disease and was fined $25 for thus breaking quarantine and committed to jail until payment of this fine and costs. The trial Judge sustained a petition for *habeas corpus* on the ground, as appears from recitals in the bill of exceptions, that no law provides for fine and imprisonment as a penalty for leaving, or escaping from quarantine. He discharged Relator from the custody of the sheriff but remanded her to the Isolation Hospital, pursuant to a previous order of the Health Department.

The sheriff appeals, asserting the importance of the issue in the administration of laws for preserving the public health. The legal question presented is whether or not the law provides for punishment by fine of one who leaves quarantine without permission of the health officer in charge.

Counsel for Relator calls for affirmance on the ground, first, that there was no motion for a new trial; but this Court has definitely held that no such motion is

essential in *habeas corpus* cases. *State ex rel. Daugherty* v. *Rose,* 167 Tenn. 489, 71 S. W. (2d) 685.

Chapter I of Title 13 of the Code of 1932 deals comprehensively with the general subject of "Preventing the Spread of Disease," and Article VII specifically with syphilis and other venereal diseases, which are defined in Code, Section 5813, as amended by Pub. Acts 1943, chap. 73, and declared to be "communicable, and dangerous to the public health." By Section 5816, as amended by Chapter 73, Acts of 1943, Health Offices are empowered to "make examinations of persons reasonably suspected," etc., of "being infected with a venereal disease of a communicable nature," and, "when in the judgment of the State, municipal or county health officer, it is necessary to protect the public health, to isolate and quarantine persons infected with a venereal disease."

 The Relator having been found to be so infected and thereupon placed in quarantine, it cannot be questioned, in view of the foregoing Code provisions, that her isolation and quarantine confinement by the health authorities was lawful.

 It is the general rule that one who breaks a lawful quarantine is subject to punishment for so doing. See 12 R. C. L., 1292, and cases cited in notes. Also, it was said in *In re Vaughan,* 189 Cal. 491, 209 P. 353, 24 A. L. R. 858, that (headnote) "one placed in quarantine by health authorities is bound to stay within the prescribed bounds, whether guarded or not."

 Code, Section 5818, as amended, provides that, "No one but a state, municipal, district, or county health officer or his duly authorized representative shall establish and terminate isolation or quarantine of persons infected with venereal diseases." Also, that "the release of a person from isolation or quarantine shall be

made when in the judgment of the health officer the disease is no longer communicable,'' etc.

Relying on these provisions for enforced segregation and quarantine of those found to be afflicted with such contagious diseases, and for the termination of such isolation or quarantine only by a health officer, the sheriff invokes Section 5824, which provides:

''Any health officer or *any other person* who fails to perform the duties required of him in this statute, or violates any of the provisions of same, or of any rule or by-law promulgated under its authority, shall be guilty of a misdemeanor, and be fined not less than twenty-five dollars and not more than five hundred dollars, and each violation shall be a separate offense.''

No stretch of construction is required to bring Relator within the descriptive phrase ''any other person,'' which we have italicised. It seems reasonably clear that one who has been placed in such quarantine ''fails to perform the duties required of him,'' and violates a basic purpose of the statute, when he leaves quarantine against the orders of those in charge, and thereby subjects himself to the penalty provided by this Code section. The whole scheme of segregation and isolation by quarantine would be ineffectual and frustrated, as argued for the sheriff, unless an obligation is imposed upon those found necessary to place in quarantine to observe its isolation restrictions.

Moreover, supporting this view, by Code, Section 5822, it is provided that, ''The state department of health is empowered and directed to make such rules and by-laws for the . . . isolating and quarantining of infected persons, as it may, from time to time, deem advisable.'' A copy of such ''Regulations'' is brought up with the record and ''Regulation 13'' therein provides:

"(A) Every person who is infected with a communicable disease, who is a carrier of the infection of a communicable disease, who is suspected of having a communicable disease or who is a contact with a case of communicable disease, shall strictly observe and comply with all orders, isolation and quarantine regulations and restrictions given or imposed by the local health officer or the State Department of Public Health, in conformity with law and pursuant to these regulations."

One who fails and refuses to "observe and comply with" such isolation and quarantine regulations violates a duty disposed upon him by law and is not only subject to the penalty provided by the foregoing Section 5824, but is guilty under Code, Section 11054, declaring it a misdemeanor for one confined in a workhouse or jail upon any charge of a criminal offense, *"or otherwise lawfully so confined,"* to escape or attempt to escape therefrom. The language we italicise would seem to include one lawfully confined in quarantine.

And, finally, under Article V of this same Chapter, subhead "Prevention of Communicable Diseases," appears Code Section 5793, which expressly provides for fine and imprisonment of "any person isolated or quarantined who shall wilfully escape . . . before he has fully recovered," etc., which would seem to have application. It is true that venereal diseases were excepted from communicable diseases dealt with under this Article, Code Section 5789, but, as has been seen, by subsequent enactment (Code, Section 5813) venereal diseases are expressly declared to be communicable diseases subject to quarantine, so that, in application of the *pari materia* rule, this provision for punishment may well be extended to those quarantined for such diseases who escape before recovery. But, however this may be, on the grounds

hereinbefore, set forth, we hold that the Relator was lawfully in isolation and confinement and was subject to fine for having escaped therefrom. Her detention was, therefore, not illegal and the judgment below must be reversed.